**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **v.**

**JUAN CARLOS RECINOS,**

        **Defendant.**

**Case No.: CR 19-00724-CJC**

**ORDER OF DETENTION**

## I. INTRODUCTION

Defendant Juan Carlos Recinos is charged with illegal reentry into the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Dkt. 1 [Indictment].) On December 20, 2019, Mr. Recinos made his initial appearance before the Honorable Maria A. Audero, United States Magistrate Judge. (Dkt. 19.) Judge Audero conducted a

pretrial detention hearing and ordered Mr. Recinos detained pending trial after finding that he posed a serious flight risk and a danger to the community. (Dkt. 14 [Order of Detention].) Mr. Recinos now moves for review of Judge Audero's detention order and for release on bail. (Dkt. 22.) For the following reasons, that motion is **DENIED**.

## II. BACKGROUND

The Indictment charges Mr. Recinos with illegally reentering and remaining in the United States after being removed following an aggravated felony conviction. (Dkt. 1.) Mr. Recinos is a non-citizen from El Salvador who has twice been removed from the United States. In November 2008, Mr. Recinos was charged in California Superior Court with (1) attempted murder of his ex-domestic partner, in violation of California Penal Code § 664(a), (2) felony spousal abuse, in violation of California Penal Code § 273.5(a), and (3) making a threat with intent to terrorize, in violation of California Penal Code § 422(a). He was convicted of the latter two charges, sentenced to a 56-month term of imprisonment, and deported on July 26, 2011 after serving a portion of that sentence.

Following this first deportation, Mr. Recinos unlawfully reentered the country by swimming across the Rio Grande on January 28, 2013. He was soon discovered by law enforcement and subsequently convicted of illegal reentry into the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). A district court in the Southern District of Texas sentenced him to a 48-month term of imprisonment to be followed by a three-year term of supervised release. Following that term of imprisonment, Mr. Recinos was deported again on October 28, 2016.

In August 2019, Immigration and Customs Enforcement ("ICE") received an anonymous tip that Mr. Recinos had returned to the United States once again. ICE agents confirmed the veracity of that tip on September 6, 2019 when they found him working at

a frozen yogurt shop in Los Angeles. He was indicted on the instant charges on November 26, 2019 and arrested about one month later.

At his initial appearance in this case, Magistrate Judge Audero ordered that Mr. Recinos be detained pending trial based on her finding that the government established by a preponderance of evidence that he posed a serious flight risk and by clear and convincing evidence that he posed a danger to the community.[1] (Dkt. 14.) Mr. Recinos filed an application for review and reconsideration of that decision, and Judge Audero conducted another hearing on January 22, 2020. At that hearing, Mr. Recinos presented additional evidence that one of his siblings was willing to sign a $75,000 surety bond secured by the sibling's home in Los Angeles. Despite this new evidence, Magistrate Judge Audero again ordered that Mr. Recinos be detained pending trial. (Dkt. 21.) Mr. Recinos now seeks review of that decision before this Court.

## III.   ANALYSIS

The Bail Reform Act permits pretrial detention only upon certain findings. 18 U.S.C. §§ 3142, *et seq*. "The whole spirit of the Bail Reform Act . . . is that a defendant facing trial should be released, rather than detained, unless there are strong reasons for not releasing him." *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972). The burden rests with the Government, which must prove by a preponderance of evidence that the defendant poses a serious risk of flight or by clear and convincing evidence that the defendant poses a danger to the community. *See* 18 U.S.C. §§ 3142(e), (f); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Government must also show that "no condition or combination of conditions will reasonably assure the appearance of the

---

[1] Mr. Recinos contends that the Government had no basis to request a detention hearing because none of the factors enumerated in 18 U.S.C. § 3142(f) were present. The Court disagrees. The Government was entitled to a detention hearing after invoking 18 U.S.C. § 3142(f)(2) and alleging that there was "a serious risk that [Mr. Recinos] will flee." (Dkt. 13 at 4.)

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In determining whether to release or detain a defendant, the Court considers (i) the nature and circumstances of the offenses charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g).

After considering these factors, the evidence presented by the parties, and the arguments of their counsel, the Court concludes the Government has met its burden. Consequently, Mr. Recinos must be detained pending trial.

**A.   Flight Risk**

The Court finds by a preponderance of the evidence that Mr. Recinos is a serious flight risk and that no condition or combination of conditions will reasonably assure his appearance as required. Two factors support this finding.

First, Mr. Recinos has demonstrated a disregard for the law and court supervision. Though Mr. Recinos has twice been deported, after each deportation, he returned to the United States despite knowing that it was illegal for him to do so. The government has also submitted evidence indicating that Mr. Recinos committed the charged offense during his term of supervised release from his 2013 unlawful reentry conviction. Mr. Recinos's alleged unlawful reentry plainly violated a condition of his supervised release which barred him from reentering the United States illegally. Equally troubling is Mr. Recinos's history of absconding to evade law enforcement. In 2007, California authorities issued a warrant for Mr. Recinos's arrest after his ex-domestic partner reported that he had attempted to murder her. After the warrant was issued, it appears that Mr. Recinos fled the state. He was not apprehended until months later when a fugitive task force located him in Washington. This pattern of violating court orders and

absconding gives the Court great doubt that Mr. Recinos would appear at court proceedings as required if it releases him on bond.

Second, Mr. Recinos has a strong incentive to flee and not appear as required given the potential punishment he would face upon conviction and the weight of evidence against him. The statutory maximum for the instant offense is twenty years. 8 U.S.C. § 1326(b). And the Court agrees with the Government that—based on the offense level and his criminal history—Mr. Recinos would likely be facing a Guidelines range of 51 to 63 months if convicted. The Government has also marshalled compelling evidence of Mr. Recinos's guilt on the charges. He was found in the United States after twice being removed. Avoiding this potential lengthy prison sentence provides a compelling reason for him to flee and not appear as required. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (citing "grave[] penalties" as a factor which gives the "defendants [] an even greater incentive to consider flight").

**B.     Danger to the Community**

The Court also finds that the Government has established by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if Mr. Recinos is released. This conclusion is compelled by Mr. Recinos's violent past. He has twice been convicted of felony spousal abuse, once in 2005 and again in 2009. The facts underlying the second conviction are particularly disturbing. The Probation Officer tasked with preparing a Pre-Conviction Report in that case submitted that on December 21, 2007, Mr. Recinos came close to carrying out plans to murder his ex- domestic partner. On that day, when his ex-domestic partner and his fifteen-year-old daughter entered the family vehicle, they found Mr. Recinos lying in wait in the backseat with rope and a knife. Once he was discovered, Mr. Recinos said to his ex-domestic partner, "you're lucky. God loves you. I was going to kill you, but our

daughter saved you." Six days later, Mr. Recinos attacked his ex-domestic partner again, apparently based on his suspicion that she was having an affair. This time, he was hiding in her shed, jumped out, pinned her to the ground, and struck her in the face several times with a closed fist. A knife fell out of his pocket during the assault, and Mr. Recinos's ex-domestic partner had to have her bottom teeth wired as a result of the beating. Based on this conduct, the Probation Officer concluded that Mr. Recinos posed "an extreme danger to the victim."

Given this troubling history of domestic violence, releasing Mr. Recinos on bail would create an unmitigated risk for Mr. Recinos's ex-domestic partner and the community at large. The Court is unpersuaded by the speculative argument that, because Mr. Recinos and his ex-domestic partner no longer co-parent their children, he has no reason to contact her and therefore poses less of a threat. Just because Mr. Recinos and his ex-domestic partner have fewer occasions to come into contact does not mean he no longer poses a threat to her. Nor does the relative remoteness of Mr. Recinos's domestic violence convictions render the Government unable to meet their burden on the dangerousness prong. Although the last instance of domestic violence against his ex-domestic partner occurred over a decade ago, during the intervening time, Mr. Recinos had limited opportunity to harm her again because for much of it, he was either incarcerated or out of the county.

## IV. CONCLUSION

For the foregoing reasons, Mr. Recinos's motion is **DENIED**.

**IT IS THEREFORE ORDERED** that Mr. Recinos be detained prior to trial.

**IT IS FURTHER ORDERED** that Mr. Recinos be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that Mr. Recinos be afforded reasonable opportunity for private consultation with counsel.

**IT IS FURTHER ORDERED** that, on order of a Court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility in which Mr. Recinos is confined deliver him to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DATED: March 3, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE